United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America, Plaintiff | ) ) ) | |
| v. | ) ) | Criminal Case No. 95-00114-CR-Scola |
| Lazaro Veliz, Defendant. | ) ) | |

## Order Denying Defendant's Motion for Sentence Reduction

Before the Court is Defendant J Lazaro Veliz's amended motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) and U.S.S.G. § 1B1.13. (Def.'s Mot., ECF No. 592). The Government has responded, opposing the motion, arguing Veliz has failed to establish any "extraordinary or compelling" reason that would warrant a sentence reduction. (Govt's Resp., ECF No. 596.) Veliz has replied (Def.'s Reply, ECF No. 601) and both parties have submitted notices of supplemental authority (Govt's Supp., ECF No. 600; Def.'s Supp., ECF No. 602). After careful review of the parties' submissions, the record, and the relevant legal authorities, the Court **denies** Veliz's motion (**ECF No. 592**).

### 1. Background

In June 1996, following a twenty-one-day trial, a jury found Veliz guilty on multiple counts of a second superseding indictment: for engaging in a Racketeer Influenced and Corrupt Organizations Act conspiracy; Hobbs Act conspiracy; Hobbs Act robbery; a conspiracy to use and carry firearms during and in relation to felony crimes of violence; and using and carrying firearms during and in relation to felony crimes of violence. (Govt's Resp. at 1–2.)

Underlying these counts is the following offense conduct. Veliz and his co-defendants were members of a criminal organization involved in robbing money and property from armored cars. (*Id.* at 2 (citing PSR ¶ 3, ECF No. 598).) As set forth in the Presentence Report, Veliz's co-defendants would plot the strikes on messengers and armored trucks and Veliz and others would execute those plans. (Govt's Resp at 2 (citing PSR ¶ 45).) The five Hobbs Act robberies charged in this case reflect that, from July 1993 to November 1994, Veliz and his co-defendants targeted and robbed at gunpoint multiple armored truck couriers, resulting in the combined theft of over $2 million as well as the theft of the couriers' firearms. (Govt's Resp. at 2 (citing PSR ¶¶ 10–12, 15–17).) Either Veliz, his co-defendant, or both carried or used firearms, physically assaulting and threatening the couriers at gunpoint to compel their compliance

during the course of each robbery. (Govt's Resp. at 2 (citing PSR ¶¶ 10–12, 15–17).) In at least one of these attacks, Veliz forcibly took a gun from an armored truck employee. (Govt's Resp. at 2 (citing PSR ¶ 12).) During a different robbery, Veliz assaulted another messenger, repeatedly, with his shotgun, holding him at gunpoint, and threatening to kill him if he moved. (Govt's Resp. at 3 (citing PSR ¶ 15).) During yet another attack, Veliz's co-defendant fired several shots at an armored truck driver, with Veliz's weapon jamming after he had fired only a single shot. (Govt's Resp. at 3 (citing PSR ¶ 17).) One of the bullets struck the driver in his arm, resulting in a disabling physical injury. (Govt's Resp. at 3 (citing PSR ¶ 17).) Altogether, Veliz was found responsible for over $1.7 million in loss as a result of these robberies. (Govt's Resp. at 3 (citing PSR ¶ 52).)

Prior to the charged conduct, one of Veliz's co-defendants asked him to come to Miami, from Connecticut where Veliz had been living, to take part in an armed robbery of Brink's armored truck in May 1992. (Govt's Resp. at 2 (citing PSR ¶ 7).) That robbery resulted in the theft of over $100 thousand. (Govt's Resp. at 2 (citing PSR ¶¶ 6–8).) Additionally, a few months later, in August, Veliz participated in an armed robbery of a Wells Fargo armored truck, resulting in the theft of over $150 thousand. (Govt's Resp. at 2 (citing PSR ¶ 9).) None of these crimes were charged. (Govt's Resp. at 2.)

At sentencing, Veliz scored a total offense level of 37 and criminal history category of I (with no previous arrests), resulting in a guideline range of 210 to 262 months. (*Id.* at 3.) However, under the version of 18 U.S.C. § 924(c) that was in effect at the time—1996—the Court sentenced Veliz to 105 years, as follows:

| Count | Offense | Sentence | Running |
|---|---|---|---|
| 1 | RICO conspiracy | 20 years | Concurrent |
| 2, 6, 9, 12, & 15 | Conspiracy to commit Hobbs Act Robbery | 20 years | Concurrent |
| 3, 7, 10, 13, & 16 | Hobbs Act Robbery | 20 years | Concurrent |
| 4 | Conspiracy to use and carry a firearm during and in relation to a crime a violence | 20 years | Concurrent |
| 5 | Using and carrying a firearm during and in relation to a crime of violence | 5 years | Consecutive |
| 8, 11, 14, & 17 | Using and carrying a firearm during and in relation to a crime of violence | 80 years | Consecutive |
| 28 | Money laundering | 20 years | Concurrent |

(Def. Mot. at 7 (citing ECF No. 506).) At the time, despite counts 5, 8, 11, 14, and 17 all appearing in the same indictment, the Court was required, under the 1996 version of § 924(c), to treat counts 8, 11, 14, and 17 as "second or subsequent conviction[s]" to count 5. This triggered four consecutive 20-year mandatory minimum sentences, resulting in a mandatory sentence of 85 years' imprisonment on the § 924(c) counts alone. (Def.'s Mot. at 7.) Under the amended version of § 924(c), in contrast, the mandatory minimum terms would apply only when a defendant has a prior § 924(c) conviction that is "final" when the subsequent § 924(c) violation is charged. First Step Act, PL 115-391, December 21, 2018, 132 Stat 5194, 5222.

According to Veliz, this change in the law, along with other changes, have resulted in his receiving an unusually long sentence compared to what he says would have been imposed today. (Def.'s Mot. at 9–10.) Veliz also maintains that his medical conditions, reduced recidivism risk, and rehabilitation also militate in favor of a reduction in his sentence—of which he has now served over twenty-nine years. (*Id.* at 10–19; Govt's Resp. at 5.) Through the motion now before the Court, Veliz seeks a reduction of his sentence to time served.

## 2. Legal Standard

Section 3582(c)(1)(A) permits a court to reduce a sentence, upon consideration of the § 3553(a) factors, where "extraordinary and compelling reasons warrant such a reduction," so long as the reduction is consistent with the Sentencing Commission's policy statement. 18 U.S.C. § 3582(c)(1)(A)(i). There are three components to accessing relief under § 3582(c)(1)(A): exhaustion; eligibility; and the Court's discretion.

As to exhaustion, the parties do not dispute that, before filing his motion, Veliz exhausted his administrative remedies. (Def.'s Mot. at 3; Govt's Resp. at 1 n. 1.) Regarding eligibility, to grant a sentence reduction, the court must find that "extraordinary and compelling reasons warrant" the reduction and that a reduction is "consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A). These requirements are closely related since the Sentencing Commission's policy statement "describe[s] what should be considered extraordinary and compelling reasons for [a] sentence reduction." 28 U.S.C. § 994(t). Effective November 1, 2023, extraordinary and compelling reasons may exist where "a defendant received an unusually long sentence" due to a subsequent change in the law that "would produce a gross disparity between the sentence being served and the sentence likely to be imposed [now,]" and the defendant has served at least 10 years of the term of imprisonment." U.S.S.G. § 1B1.13(b)(6). Additionally, under a catchall provision, "other reasons" may also qualify as extraordinary and compelling if

they are "similar in gravity" to the reasons enumerated in paragraphs (1) through (4) of the statement—either alone or when considered in combination with any of the enumerated reasons. U.S.S.G. 1B1.13(b)(5). The policy statement also provides that for a defendant to be eligible for a reduction, the court must make a finding that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. 1B1.13(a)(2).

Finally, as to discretion, the Court must consider "the factors set forth in section 3553(a)" in determining whether, and to what extent, to ultimately reduce a defendant's sentence. These factors include (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed to," for example, "reflect the seriousness of the offense, [] promote respect for the law, [] provide just punishment for the offense, . . . afford adequate deterrence to criminal conduct[,] protect the public from further crimes of the defendant[,] and" provide for the defendant's various needs in the most effective manner; (3) "the kinds of sentences available"; (4) the applicable sentencing range under the guidelines; (5) "any pertinent [Sentencing Commission] policy statement"; (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and (7) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

In sum, then, based on the above framework, in order to qualify for a sentence reduction, the Court must find extraordinary and compelling reasons warrant Veliz's release, that he is not a danger to the community, and that the 18 U.S.C. § 3553(a) factors weigh in favor of release. Importantly, the Defendant bears the burden of establishing that such a reduction is warranted. *See United States v. Hamilton*, 715 F.3d 328, 329 (11th Cir. 2013) (noting defendant has the burden to show circumstances meeting the test for a reduction of sentence).

### 3. Analysis

As the parties agree Veliz has exhausted his administrative remedies, the Court turns to whether Veliz is eligible for relief and, if so, whether the Court should exercise its discretion in affording him that relief.

Veliz first argues that he is eligible for a sentence reduction consistent with U.S.S.G. § 1B1.13(b)(6) based on the unusual length of his sentence following an intervening change in the law. In response, the Government interposes two arguments. First, the Government maintains "the Sentencing Commission exceeded its statutory authority in promulgating Section (b)(6), and acted contrary to the statute's plain text, structure, and purpose." (Govt's

Resp. at 7.) Second, the Government contends, even if the Sentencing Commission did not exceed its authority, Veliz cannot, in any event, establish that his sentence is "unusually long or grossly disparate to the sentence he might receive today based on the serious injuries involved in the underlying conduct." (*Id.* at 10–12.) While the Court disagrees with the Government as to the first issue, it nonetheless finds that Veliz has failed to carry his burden in establishing that his sentence is unusually long.

The Court has recently fully considered whether the Sentencing Commission exceeded its authority and has concluded it did not: "Because the Eleventh Circuit has never held that nonretroactive changes cannot be extraordinary and compelling reasons, this Court can accept § 1B1.13(b)(6)'s validity and applicability." *U.S. v. Taylor*, No. 03-80029-CR, 2024 WL 2262713, at *3 (S.D. Fla. May 13, 2024) (Scola, J.) (cleaned up).

Accordingly, the Court turns to whether Veliz has shown that his circumstances fit into the new "unusually-long sentence" category, which reads:

> UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b). Veliz insists that he "easily qualifies for a sentence reduction . . . because he is serving an unusually long sentence that indisputably would not be imposed today." (Def.'s Mot. at 6.) Further, argues Veliz, there is a "'gross disparity' between the sentence [he] is serving and the sentence that would likely be imposed today." (*Id.*) In support, Veliz relies on the fact that, if sentenced today, "he would be facing a mandatory consecutive sentence of 25 years instead of the 85 years he received." (*Id.* at 9.) While that is certainly true, as the Government acknowledges, this only the *minimum* sentence Veliz could receive today, and not the sentence that is likely to be imposed. And, upon a careful consideration of the record in this case, the Court agrees with the Government that there is a strong possibility, if not likelihood, that a court today would sentence Veliz higher than the minimum mandatories (and the guidelines). Importantly, Veliz participated in several Hobbs Act robberies, using firearms, threatening and resorting to

violence, and inflicting serious physical injury.[1] Indeed, Veliz was involved in the shooting of one victim, resulting in a permanent disabling injury. Accordingly, the Court finds Veliz has failed to carry his burden of establishing that a court would not have given the same sentence today, despite the greatly reduced minimum mandatory. As such, he has not shown an extraordinary and compelling reason for a sentence reduction under § 1B1.13(b)(6).

Veliz also argues he qualifies for a sentence reduction for "extraordinary and compelling reasons" under § 1B1.13(b)(5) as well, submitting that he has presented a combination of "other reasons" that are "similar in gravity" to the enumerated reasons in paragraphs (1) through (4). (Def.'s Mot. at 10–15.) In support, Veliz points to "his serious medical issues; his demonstrable rehabilitation during his incarceration over the past almost-30 years; his lack of any prior convictions; his greatly reduced recidivism risk at his age of 59; the substantial time he has already served; and the overly harsh mandatory sentence he received that," according to Veliz, "he would not receive today." (Def.'s Mot. at 11.) The Court disagrees.

First, the Court does not find that the medical issues Veliz identifies are "similar in gravity" to any of the enumerated reasons set forth in paragraphs (1) through (4). The medical conditions Veliz lists are that he "ambulates with a walker," "suffers from chronic and debilitating neck and back pain," has "multilevel disco-vertebral disease with radiculopathy down the left leg," "has "severe spinal foraminal stenosis," suffers "frequent breathing issues . . . attributable to his history of chronic obstructive pulmonary disease," must use a "continuous positive airway pressure machine while sleeping on account of his obstructive sleep apnea," and has been diagnosed with both diabetes and hypertension (which, Veliz points out, both increase his mortality risk from viral infections). (Def.'s Mot. at 11–12.) Veliz fails to show, however, how this constellation of conditions amounts to an extraordinary and compelling reason that is "similar in gravity" to the extraordinary and compelling bases for a sentence reduction articulated in § 1B1.13(b)(1) through (4). That is, he has not

---

[1] *See* U.S.S.G. § 5K2.2 ("If significant physical injury resulted, the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the extent of the injury, the degree to which it may prove permanent, and the extent to which the injury was intended or knowingly risked. When the victim suffers a major, permanent disability and when such injury was intentionally inflicted, a substantial departure may be appropriate."); *see also* U.S.S.G. § 5K2.6 ("If a weapon or dangerous instrumentality was used or possessed in the commission of the offense the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the dangerousness of the weapon, the manner in which it was used, and the extent to which its use endangered others. The discharge of a firearm might warrant a substantial sentence increase.")

shown, for example, that he is suffering from the equivalent of some condition, impairment, or deterioration "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B). Nor has he shown that he is "suffering from" the equivalent of "a terminal illness," U.S.S.G. § 1B1.13(b)(1)(A), "a medical condition that requires . . . care that is not being provided," U.S.S.G. § 1B1.13(b)(1)(C), or any other similar provision set forth in the policy statement.

Further, based on the Court's previous finding, Veliz's reliance on "the overly harsh mandatory sentence he received" is also unavailing. Nor is the Court convinced by the other reasons Veliz identifies—his rehabilitation, lack of prior convictions, reduced recidivism risk, and the time he has already served—even when combined with his medical conditions. Alone or considered together, these circumstances are not "similar in gravity" to the other enumerated provisions and do not otherwise rise to the level of "extraordinary and compelling." In other words, they do not go "[b]eyond what is usual, customary, regular, or common," such that "irreparable harm or injustice would result if the relief is not granted." *U.S. v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) (cleaned up).

Finally, even if Veliz had shown extraordinary and compelling reasons in favor of his release, he does not demonstrate that the § 3553 factors weigh in his favor, nor has he established he would not be a danger to the community. Importantly, the Court finds Veliz's sentence reflects the seriousness of his crimes and is necessary to promote respect for the law, provide just punishment for the offense, and afford adequate deterrence to criminal conduct. Additionally, the Court is unable to conclude that Veliz "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(a)(2). The underlying facts of this case, recounted above in brief, are disturbing. Veliz's spree of violence was not an isolated event but spanned two years, endangering and traumatizing the community. Also of note, although this is Veliz's first conviction, he was not charged with his participation in two prior armed robberies of armored-truck couriers. Further, Veliz's repeated representations that "he has maintained an exemplary prison record," going so far as to describe his disciplinary record as "nearly spotless," gives the Court pause in light of his actual record. (Def.'s Mot. at 15, 17, 18.) Although the most recent third of Veliz's time in custody reveals a clean and admirably productive record, he was nonetheless sanctioned several times during the earlier part of his imprisonment, through 2012, for his violent behavior and failing to abide by prison rules (including fighting, assault with serious injury, possessing an unauthorized item, encouraging others to riot, and attempted

assault). (Govt's Resp. at 5, 16.) While Veliz's rehabilitation since then is commendable, his glossy portrayal of himself as a model prisoner throughout his time in custody is troubling. Even in reply, Veliz fails to address those issues head on, minimizing them, only in passing, as merely "a few disciplinary incidents from over twelve years ago." (Def.'s Reply at 23.) In sum, the § 3553 factors and the Court's consideration of the safety of the community do not weigh in favor of Veliz's release at this time.

### 4. Conclusion

For the reasons set forth above, the Court **denies** Veliz's motion for a sentence reduction (**ECF No. 592**).

**Done and ordered** in Miami, Florida, on October 10, 2024.

Robert N. Scola, Jr.
United States District Judge